Mr. Ramey, we want to thank you and the university for taking on the case. We appreciate your service to the court and to your client as well. Thank you, Your Honor. May it please the court, I'm Travis Ramey, the director of the Appellate Advocacy Clinic at the University of Alabama. I want to thank the court for its continuing support of our clinical efforts at the university through appointed cases and the opportunities that cases like this one afford our students. I have the privilege today to introduce to the court two of our clinical students, Marie Doyle Passman and Noah Harrelson, who will present argument on behalf of the appellant, Mr. Andrew Paseur. Tell me how they're going, if you know, if not, I'll ask Ms. Passman or Mr. Harrelson, how are they going to split their time in terms of issues? My understanding, Your Honor, is that both are prepared to discuss the entire case. Okay. All right. Who's going first? Ms. Passman. Good morning, Your Honors. My name is Marie Passman, and along with my co-counsel, Noah Harrelson, we represent Andrew Paseur, the appellant. This court should vacate the district court's grant of summary judgment for three reasons. First, the district court's special report procedure is unlawful. Second, summary judgment was improper because the evidence demonstrates that Paseur slipped and fell from his buck. And finally, the discretionary function exception protects neither Mortada's mandatory medical judgment nor Greene's two-hour absence. For the fifth time this year, this court must review an Alabama district court's use of the special report procedure, and these cases demonstrate that in every instance, cutting off discovery leads to an undeveloped record, and using an uncodified procedure confuses and prejudices pro se litigants. Counsel, I agree that I was very surprised by the special report procedure being from Florida. Okay. But how do we deal with our prior precedent panel that suggests that this process is okay? Your Honor, the government cites two cases as endorsing the use of the special report in the 11th Circuit, both Hardwick and Horton. And to focus on the first issue with this special report, neither of those cases endorse a special report that cuts off discovery. So Hardwick encourages the use of special reports to the extent that they do not divest the Section 1983 plaintiff of any rights they enjoy under the federal rules of civil procedure. And in Horton, the other case that is said to endorse the special report, the actual special report order in that case, it doesn't cut off discovery either. It's modeled after Martinez reports used in other circuits that don't prevent the plaintiff from conducting additional discovery. So those cases, they don't really support the way the special report was used in this case and in many other cases used by Alabama district courts. Additionally, this court can review this issue under the abuse of discretion standard as it did in the Chapman case and the two Kisser cases earlier this year. So in those cases, this court reviewed the use of a special report by an Alabama district court under the abuse of discretion standard despite the fact that the plaintiffs in those cases did not actually object to the use of the special report. And that's a key difference because here in this case, our plaintiff, Passore, at least partially did object to the use of the special report. So in both his initial disclosures and his objections to the R&R, Passore objected to the fact that Mortada, who was the treating provider against whom he brings his FTCA claim, his testimony was never provided in the record. The government never turned it over. And he objected to that twice, and it still never made it into the record. And the district court, not the district court, the magistrate judge, when ordering the special report, required that there be declarations or affidavits from anyone with knowledge about the issues in the case, and yet there was nothing from him. Yes, Your Honor. In the special report, or this is ECF 7 at 4, it says that they're required to turn over sworn statements of all persons having knowledge of the facts relevant to the claims or any subsequent investigation, and Mortada clearly falls under that category, and they didn't apply it. And so that's sort of the narrowest holding that this court could take, that it's an abuse of discretion to not follow your own special report order. So your argument really sort of hinges on distinguishing it based on the limitations of discovery? No, Your Honor. There's other issues as well. I'm talking about in terms of the special report and why that procedure was improper here. No, Your Honor. Our other main argument related to the special report is that because this procedure is uncodified, it confuses and prejudices the pro se litigants. But that's been sort of addressed in the other cases, so that's why I'm asking that, because the discovery is really more of a distinguishing aspect from those cases. Yes, Your Honor. And that lack of codification sort of connects back to those concerns about these differences in the ways that district courts are using. But it's also, I mean, I'm on record on this issue, so. But the whole process is also not consistent with the federal rules of civil procedure. For example, the special report here told the defendants that they didn't have to file any responsive pleading. They didn't have to answer. They didn't have to file a motion to dismiss. Nothing. And then it cut off discovery. It said discovery only with court approval. And then it ordered certain things to be done and certain things weren't done. And nevertheless, summary judgment was entered against Mr. Passore. However, I think that the Supreme Court has laid out in a number of cases the principle that the lower federal courts are not supposed to add or detract from the federal rules for policy reasons. And I don't know, it just seems to me that this special report process is creating all sorts of problems. We agree, Your Honor. And to point to some other, so I focus a lot on the fact that Mortada's testimony is missing, but these discovery issues, they extend to other parts of the case as well. So in addition to not having any testimony from the treating provider, this case, in this case, we have no one who can speak to the standard of care under the AMLA. We have no statement from the... They did file a declaration from a doctor who said he did receive the appropriate standard of care. Yes, Your Honor. So Dr. Holbrook's declaration does state that, but he's not similarly situated under the AMLA because Mortada was a nurse practitioner. Your point on that issue is that nobody provided any testimony on what the applicable standard of care is for FTCA purposes. Yes, Your Honor. And additionally, we have no logbook from Green, the guard who was rounding, and this matters a lot for FTCA cases because as Hardwick sets out, special reports were originally designed for Section 1983 claims. Right, but that one gives me less pause because there's a lot of evidence in the record that we could look at, even from your own client who said he remembered, the last thing he remembered was the guard coming either at 4.30 or 5 a.m. So I mean, that's consistent with his own, the guard's declaration that he had done the rounds at 4 and 5. Your Honor, I'm out of time. Would you like me to answer your question? Yes, please. Thank you. So Passore in his complaint attested that no one came to help from 4.30 a.m. to 6.30 a.m., which conflicts with Green's account that he rounded every, he rounded at 5. So he rounded at 5 and saw Passore and said he was fine. Right, but your client, again, I mean, your client has his own testimony that said that between the last thing he remembered before falling was that there was rounds either at 4.30 or 5. Yes, Your Honor. Your Honor, there's a, there's another important Well, there is no testimony from your client to that effect. I mean, he, his complaint is verified, right? Yes, Your Honor. So yeah, he says it's that he was gone for that two-hour absence. So it's taken as an affidavit or a declaration under penalty of perjury. Yes, Your Honor. And he says that he fell at 4.30 and no one came to see him until 6.30 despite his cellmate banging on the cell door. There are other documents in the record, for example, the incident report, the statement by Officer Green, which say that, and later medical follow-ups, that say that Mr. Passore couldn't remember anything after having fallen off the bunk. But those are not his, those are other people saying what he said, and at most those create issues of fact on what really happened and what the timeline was. Obviously, Officer Green's view is, I was doing rounds every hour, I came to see him at 5, everything was okay, and then at 6 o'clock, right when I was going to do my second round, I heard all the banging and screaming and I went over and he was there lying down, bleeding by the side of the bunk. Yes, Your Honor. And the other, the last comment I'll make is the other important distinction with the difference between these FTCA cases and the Section 1983 claims is that while there are these factual sort of questions about who was rounding and when, the special report allowed Green to allude to policy. So in his declaration, he said, I was following, you know, prison policies in the way that I rounded the morning of the accident. However, he doesn't actually turn over any of those policies, and those policies could have been very useful for different discretionary function exception analysis, and so that's a real challenge with the special report in these FTCA cases because you're asking. But you're not really challenging the rounds that Mr. Green made. I mean, the way I read the complaint was really the FTC challenge that you have is to the bunk policy. I didn't read it that you had any other FTC claim. There's a negligence claim against Green. For not providing medical care in a timely fashion, right? Yes, Your Honor. And I'll pass over to my co-counsel to continue. All right. Thank you very much. Mr. Harrelson. Good morning. If I may, I'll pick up right where she left off, and that is to point out that in a similar case out of the Fourth Circuit, Rich, the court viewed the fact that there were clearly Bureau of Prisons policies implicated by the facts that weren't in the record justified a vacator and remand. Here, with Green's 5 a.m. count, if it was mandatory, and there's a genuine issue of material fact as to whether he did it or not. I'm sorry, if it was, what was mandatory? That 5 a.m. count. I see. Okay. If it was mandatory and he did not perform it then, then that would violate the discretionary function exception. He would not be protected. But that is not before this court. The record, at least as it exists now, does not contain any document setting forth the BOP policy for rounds by correctional officers, especially at that institution, right? There's nothing about rounds or more structured counts or just continuous observation. And there's no declaration or affidavit from a supervisory official in the BOP or at that facility that lays out what the BOP policy is for rounds or counts. Yes, Your Honor. All we have is Officer Green's declaration. Yes, Your Honor. And I'll add as to the factual issue with the claim against Officer Green is that when Pessoir was seen by a provider after he fell, that provider actually used few hours. So the upper ceiling on that amount of time is a few hours that he was not seen. But moving on to the AMLA claim, Your Honor, if I may, the district court improperly weighed the evidence in two significant ways. As my co-counsel alluded to. Well, he doesn't have an AMLA claim. He does, Your Honor. The district court held that it failed on causality. You can't sue. You can't sue the United States under the AMLA. You've got sovereign immunity problems. The AMLA is a way of showing that there would be liability under state law and therefore the United States government is liable under the FTCA because it's waived sovereign immunity. Are you suggesting that Mr. Pessoir can assert a state law claim against the United States as sovereign without the United States waiving sovereign immunity? Your Honor, that was my reading of Section 1346 and seemingly that was what the district court took for granted is that under Section 6-5-548 and other statutes under the AMLA that there was a duty as a medical provider. No, no. Right, right. But you only use the AMLA as a way to figure out whether or not a private person would be liable under state law. If the answer is yes, that potentially makes the United States liable for the negligence of one of its employees under the Federal Tort Claims Act. But I just want to make sure we're on the same page. There's no direct liability under the AMLA against the United States, right? It's a means of articulating that duty, yes, Your Honor. Okay, okay. I understand that. The district court found that there was no causality. The district court heavily relied on... That's the proximate cause finding that the district court made, that there was no proximate cause. Yes, Your Honor. So can you tell us then what was your position on what would the proximate causation be? Why was the district court incorrect in making the finding that there was no proximate cause? Admittedly, Your Honor, there were contradictory statements from Mr. Passore, but this court is no stranger to contradictory statements from plaintiffs. But there was a statement in his investigation that he slipped and fell from the rail on the top bunk. And given that he had alerted Nurse Practitioner Mortada about his push issues, it is sort of like loading one bullet in a gun for Russian roulette, where inevitably, that will cause an issue, and here it did cause that issue. And I think even a layman can understand how someone getting in and out of bed would slip and fall and injure themselves. And again, granted, there are contradictory statements, but at summary judgment, we look at things in a light most favorable to him. And both the fact that there was a rail and the fact that he said he slipped and fell immediately after the accident when that investigation was conducted means the district court should have viewed it that way. And as my co-counsel alluded to, the district court weighed Dr. Holbrook's testimony far too heavily because he had neither personal knowledge of the facts, nor was similarly situated. Basically, his declaration means nothing. He couldn't talk about facts, and he couldn't contribute to the legal discussion. He could not develop the record. There is, as you mentioned, Judge Doran, there is no one who can address standard of care and breach in this case. Additionally, this places him... Well, he did implicitly by saying that Mr. Passore received a reasonable amount of care under the circumstances, right? That's at least an implicit statement by him as a medical professional that Mr. Passore didn't need to receive anything else, whether it was a further diagnosis or lower bunk or anything else. Yes, Your Honor. That is what he said. To be fair, he said effective medical care. And this sort of drags against the government's discretionary function exception argument, which is that there was no medical decision made that this was a lower bunk decision. But under the lower bunk memo, it requires the standardization of the assignment of bunks, and it does this by saying that the medical duty status restrictions must be consistent with an inmate's medical and or mental health condition. And the government concedes on page 24 of its brief that the validation requirement was mandatory. This brings it under a factual analog of Berkovitz. In Berkovitz, there was a vaccine agency and they were required under the scheme to not make arbitrary decisions. They were required to receive test information, view if the tests were compliant, and then grant. And there was no discretion there. But how is this mandatory as opposed to discretionary? Because it doesn't specifically say that how to go about deciding whether or not someone is entitled to a lower bunk assignment. I mean, you have to go through criteria. You have to look at different things that are, there are some things that are mandatory. So if you have a seizure disorder, that would be mandatory. If you have a total joint replacement, that's temporary. Yes, Your Honor, the criteria themselves are not mandatory, but the requirement that they be, and I see I'm over my time, Your Honor, may I finish the question? Yes, of course. Thank you. The validation requirement is mandatory. And as a side note, Your Honor, PASOA's actual medical condition is not in this record. All we have is an intake screening, which is not sufficient to establish that. And to again analogize to Berkovitz, they weren't told whether they were going to grant or deny that vaccine license. All they were told was that it was mandatory to receive that test information, evaluate compliance, and then make a decision. By not doing that, there was no discretion in that case. Thank you, Your Honor. All right. Thank you. Ms. Ward? Good morning. Good morning. May it please the Court. Carla Ward for the United States. I'd like to start with this idea that the guard was negligent. That was an issue that the Court never reached, because it decided that the discretionary function exception applied to the rounds conducted by the guard. Moreover, that is an issue completely waived by the plaintiff and was raised for the first time on appeal. So once the R&R issued by the magistrate judge— Did the prosecutor not object to the R&R on the Green issue? He did not, Your Honor. He also did not file objections to the special report related to the negligent guard. He did not file objections to the R&R. And he did not mention the negligent guard in his notice of appeal. These questions have no bearing on you or your office. You're dealing with a process that the Court set up, and you respond to it like a litigant. But you're here to defend the judgment, so you're the one who gets these questions. It will be nice. What is the justification for making discovery—let's assume the special report process as a general matter is valid, although it's not permitted by the federal rules of civil procedure. What is the justification for precluding either side from engaging in paper discovery? So Your Honor, if I may answer that question in two parts. First, this Court has said that this procedure is valid in Horton, recently in February of this year. That wasn't a side by a panel that wasn't dealing with the merits of the special report process. Yes, Your Honor. But discovery and the special report process came up in that case. And in analyzing the issue present in that case, whether there should be a sui sponte grant of allowing the plaintiff to amend his complaint after the summary judgment process, the Court had to analyze whether the special report process in that case was fair to the plaintiff. And in that case, the Court analyzed facts that are remarkably similar to the special report process in this case. And in Horton, it found that the use of that process in that case was a fair use of the special report process. And it noted the districts that used this process, the long history of its use, and the reasons for its use. And one of those reasons, which I think goes to the second part of your question—the second point in which I would like to answer your question—is that it's actually meant to help both parties, not just the defendant. It's meant to preclude discovery that would be burdensome and costly. Pro se plaintiffs, prisoner plaintiffs, are incarcerated and do not have the funds to conduct discovery, such as depositions and make paper copies and things of that nature. So the Court is protecting the pro se plaintiff by not permitting the defendants to require burdensome discovery on the plaintiff. And it's also preventing— Well, but nothing—but the defense and the incarcerated plaintiff are not on the same footing. You could allow discovery, paper discovery from the plaintiff. He could send out interrogatories. He could send out requests for admissions. He could send out requests for production, for example, about his medical records or about any prison policies regarding when prison correctional officers have to make their rounds, et cetera. And the defendants who are there at the prison site can easily take his deposition. So I just don't understand the problem. I can understand the Court stepping in if someone's abusing the process or not using it in a way that's helpful. But to prevent parties from doing something that the federal rules of civil procedure permit seems to me to be antithetical to a code that's supposed to govern almost all federal litigation. Yes, Your Honor, I understand your concerns. And there have been specific cases in which this Court has said that that process has been abused. However, the situation in this case is most analogous to a situation in which this Court said it was not abused. And there are, pro se prisoners file a lot of complaints in federal court. Certain district courts have held, have decided that it is in the best interest of their efficient judicial process to decide these cases using the special report process to promote efficiency in their operations. It's just, it's just sort of odd because Florida, we don't have that here in Florida. So I just don't understand why it's needed and we seem to have no issues in Florida dealing with pro se plaintiffs. And that's just, that's just a, you don't need to respond to that. Thank you. I cannot speak for the judges in our district. I am a lawyer for the United States and I can say, if I may, I have been a civil way USA for almost 10 years and have dealt with a special report process in that time. And it does not always work out in the government's favor. There are many times in which we have been required to go to trial on, in cases where a special report is required. We are required to waive service under the special report process. We are required to provide declarations and information up front. And if I may turn to this case, this case, it's a little bit different than the cases that we're discussing because those were in the 1983 context. In this case, it's an FTCA case. And the first issue addressed by the court was whether the discretionary function exception applies. Typically, that issue is decided on a motion to dismiss, so further discovery isn't even required. In this case, there was further discovery because of the special report process, but that was unnecessary to the court's analysis of whether the discretionary function exception applies. What additional discovery was required? So Your Honor, in the special report order, document seven, the court required defendants and plaintiffs to exchange initial disclosures and include declarations and other information. The court also ordered the defendant to submit the plaintiff's medical records, which it did so. And so it also, the defendants also provided the lower bunk criteria, which courts have held that the burden is not on the defendant to provide the policy when deciding a discretionary function exception and whether that applies. The defendants did provide that. Here's the potential problem, and I'm going to give you a hypothetical that cuts against your position to see how you address this hypothetical. If the prison at Talladega had a policy, or if the POP had a general policy that said correctional officers in a facility of this size are to do rounds every 15 minutes, no ifs, ands, or buts, and this officer decided on his own, again, this is hypothetical, decided on his own to do the rounds every hour, would the discretionary function exception apply? It would not, Your Honor. Right, and we don't have a policy from the government on what the rounds were supposed to be. There's no written policy from the POP about how often you do the rounds. If there were, that would be a discretionary decision. I grant that. Even if you had a declaration from a higher level POP official or a Talladega official, we require our officers to do rounds every hour. We've taken a lot of factors into account. That's what works for us. Same thing. But all we have is the correctional officer saying, I did them every hour. And I think that was consistent with prison policies, but that's a very slim read on which to say that he was exercising a discretionary function, and I know the argument that he's waived everything regarding Mr. Green. But it's just difficult to see why the government didn't produce a policy, assuming one existed. Your Honor, in the special report, the government says a policy did not exist. Then how do we know there's a discretionary function when it's a low-level employee deciding what to do and what not to do? So Your Honor, if a lower level, this court has said, an artery, following the Supreme Court ruling, and more recently in Foster Logging in 2022, the subjective intent of the guard does not matter to the discretionary function analysis. You look at the conduct alleged, which is the officer's decision of when to make rounds. You look at the policy. Here there is no policy. If there is no policy, then it is assumed that the conduct is discretionary. Here the government alleged that there was no BOP policy that required rounds at specific intervals. The only policy that was alleged by the plaintiff to apply to this case was 18 U.S.C. 4042, which is the general duty of safekeeping and care, which this court has held is discretionary and provides the BOP with great leeway. But see, in a normal world, in a normal federal rules of civil procedure world, if one party says there is no policy, what does the other side do? It doesn't accept that. It's going to test that assertion. It's going to take a deposition. It's going to take a deputy warden or the warden. You probably go up the ladder at Talladega and ask him or her, you say in your responses to the special report process that there is no policy. Is that correct? Yes, that's correct. There's no policy. How do you determine how to do the rounds? Is there any general? You'd ask further, and maybe at the end of the day, the government's assertion is correct and undeniable that there is no written or other sort of policy, and then you default to how we decide discretionary function. But this special report process, I'm speaking only for myself, seems to cut off that avenue absent court approval, and that just doesn't seem right to me, but I may be in the minority. And Your Honor, I believe you are. This court has held in its prior precedent that, and again, I'll mention auditory and foster logging, that it cautions against conducting a fact-based inquiry into the circumstances surrounding the government actor's exercise. So as I said, typically, whether the discretionary function exception applies, it's decided on a motion to dismiss. It was not in this case. And in that case, when courts are deciding the discretionary function exception on a motion to dismiss, there is no further discovery. But don't you, in order to determine whether or not the discretionary function exists, don't you still have to determine, one, whether it's mandatory? Because if it's mandatory, then there is no discretion, right? Yes, Your Honor. So how does that normally get determined in a motion to dismiss? Well, Your Honor, as you know, a motion to dismiss can be a facial attack or factual attack on a complaint. So in a factual attack, a defendant can attach further evidence. And so it is in the best interest of the government, obviously, to attach policies it believes are relevant to the inquiry. But regardless of that, this court has said in numerous cases that the burden is on the plaintiff in either one of those cases to plead a claim that is outside the discretionary function exception. Well, he pled it, right? It's just you're saying he didn't prove it. He certainly pled in his complaint. He's got two pages saying why the discretion, he anticipated the issue. So he pled that there was no discretionary function exception. So that's not an issue. You're just saying he didn't prove that it didn't apply. Yes, Your Honor. All right, let's turn to the doctor. Same sort of thing. A doctor presents a declaration or affidavit expressing his or her views on the standard of care, whether right proper care was provided, whatever. The other side doesn't take that as a given and say, oh, the other side's doctor thinks everything's okay. Well, time to go home. You take the deposition of the doctor and you ask the doctor, you say he got appropriate and effective care. Tell me why you think that is. The doctor answers, what standard of care did you use? Why do you think that standard of care was appropriate to a nurse practitioner in a prison setting? And you get factual development. And all of that is precluded, absent court permission, by the special report process. Maybe it's time to try to go on bonk and just burn that process to the ground. Maybe. I'll leave that argument up to someone else from my office, if that happens, Your Honor. But I will say with respect to the standard of care, that magistrate judge analyzed that negligence claim under the AMLA. As you mentioned, when my friends were arguing, it is an FTCA claim, however, under the FTCA courts look to the relevant state law that is applicable, and here it would be the AMLA. However, there are three elements a plaintiff must meet to prove a claim under the AMLA, and one of those is proximate cause. And the magistrate judge in that case, in this case, sorry, held that there was no unrebutted evidence that proximate cause, the decision of Mortada, his so-called negligent medical review, led to Mr. Passeur's fall from the bonk. So Mr. Passeur did not object to any of the factual conclusions that the magistrate judge made related to that. He did not file any objections to the special report related to that. In fact, he may have realized that that was an issue for him because his notice of appeal, he came up with a whole new issue why he may have fallen out of the bonk that he had not made up until that point. So what the magistrate judge said is, there is no need for an expert on the standard of care because we know he cannot meet his burden of proof under the proximate cause issue. And that is why the magistrate judge found summary judgment in favor of the government on that claim. But he asked for an expert to be appointed on his behalf, and the magistrate judge denied that too, and then relied on the special report process to grant summary judgment against him. So it's almost like you say, you need expert testimony. He says, I know, I want an expert, and the court says, no, no expert for you. It just doesn't seem right. If I may answer your question, I see my time is up. So the magistrate judge again analyzed his request for an expert under Federal Rules of Evidence 706 and said that he didn't need an expert related to whether the standard of care had been breached. However, there would be no need for an expert on the standard of care because he cannot meet, based on the unrebutted evidence, he cannot meet his burden for proximate cause. And no expert is needed on whether proximate cause existed based on the evidence that he presented. May I ask a question? Of course. Do you believe, though, that if the facts had been different, so let's say that he doesn't get the lower bunk assignment and that evening he falls and has the same injury, would that be different in terms of the proximate cause? Your Honor, it depends on, it's possible. That's not the situation we're presenting. I know, I understand that. But hypothetically, I just wanted to test how far you would concede that. Yes, hypothetically. But again, if I may note the facts that are present here in his complaint, Mr. Passore said he fell out of bed while he was asleep. In his administrative claim, he said he fell out of bed while he was asleep. And he repeated that in document 10, which was his, he calls a notice of verified complaint where he re-alleges his allegations. He again says he fell out of bed while asleep. So regardless of the temporal argument, he does not allege he fell out of bed because he slipped nowhere in his pleadings. And Your Honor, I see that my time is up. I would like to rest on our breaths. And if I may join this Court in expressing my appreciation for the students from the University of Alabama School of Law, it is my alma mater, and they have represented it very well. Then I can say this appropriately. Roll Tide to everybody. Thank you very much, Ms. Ford. Okay, you've got two minutes, Mr. Harrelson. Yes, Your Honor. I have a few things to clear out. First, Passore did specifically object to the magistrate's factual findings in his objections to the R&R at page 4, and he specifically cited to Anderson v. Liberty Lobby, which for a pro-state prisoner is a pretty impressive citation. Additionally, counsel for the government stated that discovery is atypical with a factual attack for a motion to dismiss. However, it is quite normal in FDCA cases for there to be jurisdictional discovery warranted because they are so fact-intensive and because we need those policies in the record. Therefore, this is not atypical. Additionally, counsel for the government continually mentions that the burden is on Passore, which is interesting because here, his ability to meet that burden was specifically taken away. So all of those statements point to an issue with the special report itself. Another issue is that they allude to Horton as an endorsement, but as my co-counsel said, in Horton, they did not cut off discovery. In fact, they cited to the 1980 Judicial Committee that essentially adopted the exact language from the Martinez report, which did not cut off discovery. And then, Judge Jordan, I would disagree that you were in the minority as to Chapman because in the majority there, there was a citation to Artistic Entertainment, which stated that sua sponte summary judgment is not warranted when the record is not fully developed. It wasn't quite developed, rather developed, somewhat developed. It was fully developed, and I don't think anyone here would say that this record was fully developed. As a matter of fact, with the claim against Mortada, all we have that is actually relevant to what he did is the statement, we don't do that here. Therefore, this court should vacate and remand. Thank you. Let me ask you a quick question. Opposing counsel said that your client had specifically said that he had rolled out of bed while sleeping, and that's a little bit different than what I had heard you say earlier, at least what the brief said about him having had a seizure. What is your position on that? Your Honor, this is an atypical case because the best evidence for the government is the vague language in the complaint, and the best evidence for the plaintiff is the government's own special report. It is a genuine issue of material fact if he had a seizure, if he slipped out of bed, or if he fell while sleeping. However, when there are contradictory facts like that, at summary judgment, we look at things most favorably to him. And I would again highlight that in the special report, it twice says, and under the heading factual finding it says, that he slipped and fell from the rail on the top bunk. Okay, but she says, opposing counsel says that you had acknowledged, or at least that your client had said, that he had fallen asleep and then fallen from the bed. Any response to that? Yes, Your Honor, he did contradict himself. Okay. Thank you. Thank you. All right, thank you all very much. Thank you.